UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE GEORGE POTTS, JR.,

Petitioner,

v. CASE NO. 2:25-CV-10822
HON. DENISE PAGE HOOD

DONALD CURLEY,

Respondent.
_____________________________/

**OPINION & ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, & DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

## I. Introduction

Michigan prisoner Willie George Potts, Jr. ("Petitioner"), currently confined at the Newberry Correctional Facility in Newberry, Luce County, Michigan, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in custody in violation of his constitutional rights. ECF No. 1. Petitioner was convicted of voluntary manslaughter, Mich. Comp. Laws § 750.321, following a jury trial in the Macomb County Circuit Court. He was sentenced as a third habitual offender, Mich. Comp. Laws § 769.11, to 10 to 30 years in prison in 2022. In his petition, he raises claims concerning the sufficiency of the evidence, the use of jury badge numbers, the conduct of the prosecutor, and the

effectiveness of trial counsel. *Id*. For the reasons stated herein, the Court denies the habeas petition, denies a certificate of appealability, and denies leave to proceed in forma pauperis on appeal.

## II. Facts and Procedural History

Petitioner's conviction arises from the stabbing death of Marcus Triplett at a hotel in Roseville, Michigan on December 23, 2020. The Michigan Court of Appeals described the underlying facts, which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> This case arises from the fatal stabbing of Marcus Triplett at a hotel in Roseville, Michigan. On December 23, 2020, Tanisha Askew, an acquaintance of defendant, and Shante Stinson, an individual who stayed in a Microtel Inn hotel room across from Askew, visited defendant and Triplett at the Extended Stay Hotel, where defendant was staying. During the visit, defendant began recounting an altercation that occurred earlier in the night. Triplett told defendant to stop talking about that incident or else he would punch defendant in the mouth. Defendant continued to talk about the earlier altercation, and Triplett walked over to defendant and "hit him in his mouth twice," after which defendant then left.
>
> Approximately five minutes later, defendant returned to the hotel room and "wildly pushed the door open." He told Triplett, "[You are] embarrassing me, get the f*** out." Triplett then replied, "[I]f I get up one more time again, [I am] going to blow your s*** out." Triplett began to walk toward defendant, who was standing on the outside of the hotel room in the hallway. Triplett did not have a weapon on him, and both Triplett and defendant appeared

> intoxicated. Triplett joined defendant in the hallway and, because of where Askew was sitting inside the hotel room, she could not see either defendant or Triplett during the confrontation. Shortly after, Triplett returned to the room and lifted up his shirt revealing a knife wound.
>
> Defendant came back into the room holding a knife and looking "more hostile." Defendant then stated, "[I am] going to kill this n*****." Askew and Stinson then left the room while Triplett was still leaning over the chair, struggling to breathe. Stinson then called the police. On the way back to the Microtel, Askew and Stinson noticed defendant leave the Extended Stay Hotel and follow them back to the Microtel Inn. Triplett later died from a stab wound to his left chest.
>
> Defendant testified at trial. According to defendant, Stinson, Triplett, and Askew visited him in his hotel room at the Extended Stay Hotel where they drank alcohol and did drugs. Defendant stated Triplett became belligerent and loud, and told Triplett if he wanted to smoke, he needed to do it in the bathroom. Triplett became upset and punched defendant in the mouth. Triplett then told defendant he would "beat [defendant's] a**" and drew a knife. Defendant kicked the knife from Triplett's hand, grabbed the knife, and then stabbed Triplett with it. Defendant stated he was "defending and protecting [himself]." After Triplett was stabbed, defendant "got scared" and "almost immediately" left the room, but denied leaving the room during the incident. Defendant stated he did not call 911 because the incident was "so traumatic."

*People v. Potts*, No. 364227, 2024 WL 742097, *1 (Mich. Ct. App. Feb. 22, 2024.

Following his convictions and sentencing (and resentencing), Petitioner filed an appeal of right with the Michigan Court of Appeals raising

the same claims presented on habeas review. The court denied relief on those claims and affirmed his convictions (remanding the case for a ministerial correction to the judgment of sentence). *Id.* at *2-7. Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Potts*, _ Mich. _, 11 N.W.3d 501 (2024).

Petitioner thereafter filed his federal habeas petition. He raises the following claims:

I. The trial court violated his due process rights by impaneling a jury referred to only by juror numbers without giving a proper cautionary instruction.

II. He was denied his constitutional due process rights where the prosecutor failed to disprove beyond a reasonable doubt that the killing was justified by self-defense.

III. The prosecutor's improper cross-examination of him, comments on his right to remain silent, argument that he is a liar, and reference to facts not in evidence shifted the burden of proof and denied him a fair trial. Trial counsel was also ineffective for failing to object to the prosecutor's misconduct.

ECF No. 1. Respondent has filed an answer to the petition contending that it should be denied. ECF No. 8.

## III. Standard of Review

Federal law imposes the following standard of review for habeas cases brought by state prisoners:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a

federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-521 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. In order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*.; *see also White v. Woodall*, 572 U.S. 415, 419-420 (2014). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision reasonable. *Woods v. Etherton*, 576 U.S. 113, 118 (2016); *Woods v. Donald*, 575 U.S. 312, 316 (2015).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme

Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-126 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. It "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are determined solely by Supreme Court precedent. "[C]ircuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v.*

*Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998). Habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. Analysis

### A. Sufficiency of the Evidence

Petitioner first asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to rebut his claim of self-defense and to support his voluntary manslaughter conviction. Respondent contends that this claim is not cognizable and that it lacks merit.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The

Court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The *Jackson* standard is applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16.

Additionally, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). A federal court may not re-weigh the evidence or re-determine the credibility of the witnesses, but instead must defer to the factfinder at trial as to such matters. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Matthews*, 319 F.3d at 788. The "mere existence of sufficient evidence to convict ... defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-789.

Under Michigan law, voluntary manslaughter is "an intentional killing committed under the influence of passion or hot blood produced by adequate provocation, and before a reasonable time has passed for the blood to cool and reason to resume its habitual control." *People v. Fortson*, 202 Mich. App. 13, 19, 507 N.W.2d 763 (1993); *see also People v. Pouncey*, 437 Mich. 382, 388, 471 N.W.2d 346 (1991); Mich. Comp. Laws § 750.321. When the defendant produces evidence to support a theory of self-defense, the

prosecutor has the burden of disproving it beyond a reasonable doubt. *People v. Bell*, 155 Mich. App. 408, 414, 399 N.W.2d 542 (1986); *see also Fortson*, 202 Mich. App. at 20. "[T]he killing of another in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v. Heflin*, 434 Mich. 482, 502, 456 N.W.2d 10 (1990).

Petitioner raised this claim on direct appeal. The Michigan Court of Appeals applied the foregoing standards and denied relief. The court explained:

> We "review de novo a challenge on appeal to the sufficiency of the evidence." *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). We "examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *Id*. at 196. "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Head*, 323 Mich App 526, 532; 917 NW2d 752 (2018). "With regard to an actor's intent, because of the difficulties inherent in proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v McKewen*, 326 Mich App 342, 347 n 1; 926 NW2d 888 (2018) (quotation marks and citation omitted).
>
> ***
>
> "[F]or an act to be considered voluntary manslaughter, the defendant must kill in the heat of passion, the passion must be caused by adequate provocation, and there cannot be a lapse of time during which a reasonable person could control their

passions." *People v Yeager*, 511 Mich 478, 489; _ NW2d _ (2023). Regarding the affirmative defense of self-defense, an individual may use deadly force against another if the "individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual." MCL 780.972(1)(a); *see also People v Riddle*, 467 Mich 116, 127; 649 NW2d 30 (2002). Additionally, "[o]nce a defendant raises the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt." *People v Ogilvie*, 341 Mich App 28, 36; 989 NW2d 250 (2022) (quotation marks and citation omitted).

Viewing the evidence in the light most favorable to the prosecution, the evidence supported, beyond a reasonable doubt, that defendant's conduct was not justified by self-defense. On the night of the incident, Triplett's wrist was injured after a separate altercation earlier in the day. Triplett also was intoxicated and did not have a weapon on him. After Triplett punched defendant in the face, defendant left the room for several minutes, thus leaving the scene and going to a place of safety. When he returned, he aggressively opened the door and began shouting at Triplett to get out. When defendant and Triplett stepped out into the hallway, at some point, defendant stabbed Triplett in the chest. After both men returned to the room, defendant looked "hostile" and was holding a knife. Defendant then stated, "[I am] going to kill this n*****." Triplett did not have a weapon and did not use force other than punching defendant. Askew also believed that Triplett did not want to actually hurt defendant and simply wanted to "teach him a lesson being quiet." Additionally, the evidence does not support that defendant was seriously injured by Triplett's punches. Thus, we conclude defendant did not have an honest and reasonable belief of death or serious bodily injury. Consequently, we also conclude

> defendant's use of deadly force in response to Triplett's threats went beyond the force needed to stop Triplett's threats of punching defendant. In all, sufficient evidence was presented to establish, beyond a reasonable doubt, that defendant did not act in self-defense.

*Potts*, 2024 WL 742097 at *3.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The trial testimony, particularly that of Tanisha Askew, revealed that Petitioner and the victim, Marcus Triplett, had a verbal altercation in a hotel room. Triplett subsequently punched Petitioner twice in the mouth. Petitioner left the room and returned a few minutes later with a knife. The two men went into the hallway where Petitioner stabbed Triplett, who was unarmed. After Triplett re-entered the room, but before he collapsed, Petitioner brandished the knife and said he was going to kill Triplett. Petitioner then fled the scene and did not report the incident to the police. Such evidence, viewed in a light favorable to the prosecution, was sufficient to establish that Petitioner committed the offense of voluntary manslaughter and to refute his claim that he acted in self-defense.

Petitioner challenges the jury's evaluation of the testimony and evidence presented at trial. However, it is the job of the fact-finder at trial,

not a federal habeas court, to resolve such evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *see also Walker v. Engle*, 703 F.2d 959, 969-970 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. Habeas relief is not warranted on this claim.

**B. Use of Juror Numbers**

Petitioner next asserts that he is entitled to habeas relief because the trial court referred to the jurors anonymously, using their juror numbers instead of their names. Respondent contends that this claim is procedurally defaulted and that it lacks merit.

The "decision to empanel an anonymous jury 'is within the sound discretion of the trial court.'" *United States v. Lawson*, 535 F.3d 434, 440-441 (6th Cir. 2008) (quoting *United States v. Talley*, 164 F.3d 989, 1001 (6th Cir. 1999)). The United States Court of Appeals for the Sixth Circuit has indicated that the empaneling of an anonymous jury should be limited to

certain circumstances where there is "strong reason to believe the jury needs protection" and the court should take "reasonable precautions to minimize any prejudicial effects." *Talley*, 164 F.3d at 1001-1002 (citing Second Circuit cases). The United States Supreme Court, however, has never held that there is a constitutional right to a public jury. *Lawson*, 535 F.3d at 440 ("The Sixth Amendment provides defendants with a right to a public *trial* by an impartial jury, but it does not guarantee a right to a public *jury*.") (emphasis in original).

Petitioner raised this claim on direct appeal. The Michigan Court of Appeals reviewed the claim for plain error and denied relief. The court explained in relevant part:

> An anonymous jury is one in which "certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). While an anonymous jury "may promote the safety of prospective jurors," its use may come at the "potential expense to two interests of the defendant: (1) the defendant's interest in being able to conduct a meaningful examination of the jury and (2) the defendant's interest in maintaining the presumption of innocence." *Id*. at 522-523. Therefore, to challenge successfully a court's use of an anonymous jury, "the record must reflect that the parties have had information withheld from them, thus preventing meaningful voir dire, or that the presumption of innocence has been compromised." *Id*. at 523.

In *Williams*, the trial court referred to the jurors by numbers instead of by their names at trial. *Id*. However, this Court noted that there was nothing in the record to show that "any information was actually withheld from the parties." *Id*. Both parties conducted voir dire and no information other than the juror's names was withheld. *Id*. at 523-524. Thus, there was "nothing to indicate that [the] defendant's ability to effectively examine the venire was compromised in any way." *Id*. at 524. Additionally, the defendant's presumption of innocence was not undermined because there was "no suggestion on the record that the jurors understood the use of numbers rather than names to be anything out of the ordinary." *Id*. We concluded, therefore, that the trial court had not impaneled an anonymous jury "in the strict sense of the term," and thus, defendant's due-process rights had not been violated. *Id*. at 523, 525.

This Court reached a similar conclusion in *Hanks*, 276 Mich App at 94, where the trial court also identified jurors by numbers. Both parties "conducted extensive voir dire" and there was "no indication that any of the jurors believed that there was any significance in the use of numbers instead of names." *Id*. The defendant also failed to establish that using numbers to refer to jurors "prevented him from conducting meaningful voir dire or that his presumption of innocence was compromised." *Id*. Therefore, we concluded the jury was anonymous "only in a literal sense, so none of the dangers of an 'anonymous jury' was implicated." *Id*.

Here, the record reflects that the jurors were identified only by their badge numbers throughout trial. However, the record also shows that, on the first day of trial, both parties conducted extensive voir dire. Additionally, there is nothing in the record to show that any other information besides the jurors' names were withheld from the parties. There is also no indication in the record that any of the jurors believed the use of numbers instead of names was significant to the case. Further, during both the preliminary and closing jury instructions, the court instructed the

> jury that defendant is presumed to be innocent until proven guilty beyond a reasonable doubt. Thus, we conclude, like the defendants in *Williams* and *Hanks*, defendant has failed to show that the use of numbers compromised his presumption of innocence or kept him from conducting meaningful voir dire. *See Williams*, 241 Mich App at 524; *Hanks*, 276 Mich App at 94. Therefore, we conclude defendant has not established any plain error affecting his substantial rights.

*Potts*, 2024 WL 742097 at *2-3.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Under the AEDPA, "if there is no clearly established Federal law, as determined by the Supreme Court that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 454 (6th Cir. 2005). While the Sixth Circuit has indicated that empaneling an anonymous jury should be limited to certain circumstances, Talley, 164 F.3d at 1001-1002, the Supreme Court has never held that there is a constitutional right to a public jury. *Lawson*, 535 F.3d at 440. Consequently, Petitioner cannot demonstrate that the state court's denial of relief on this claim was either contrary to or an unreasonable application of clearly established Supreme Court precedent. *See Lopez v. Smith*, 574 U.S. 1, 6-7 (2014) (2014); *Wright v. Van Patten*, 552, U.S. 120, 126 (2008) ("Because our cases

give no clear answer to the question presented ..., it cannot be said that the state court unreasonably applied clearly established Federal law."); *see also* *Robinson v. Trierweiler*, No. 19-11420, 2025 WL 907878, *6 (E.D. Mich. Mar. 25, 2025) (denying habeas relief on similar claim due to lack of Supreme Court authority); *Gray v. Douglas*, No. 2:21-CV-11356, 2023 WL 6519259, *8 (E.D. Mich. Oct. 5, 2023) (same). Habeas relief is therefore not warranted on this claim.

### C. Conduct of the Prosecutor

Petitioner also asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by commenting on his right to remain silent, calling him a liar in front of the jury, and arguing facts not in evidence. Respondent contends that these claims are procedurally defaulted and that they lack merit.

The Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must show that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*,

416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard). The standard "is a very general one, leaving courts more leeway ... in reaching outcomes in case-by-case determinations." *Parker*, 567 U.S. at 48 (punctuation modified). "That leeway increases in assessing a state court's ruling under AEDPA" because the court "cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable." *Stewart v. Trierweiler*, 867 F.3d 633, 638-639 (6th Cir. 2017).

Petitioner raised these claims on direct appeal. The Michigan Court of Appeals reviewed them for plain error and denied relief. The court explained:

> 1. RIGHT TO REMAIN SILENT
>
> The federal Fifth Amendment prohibits the admission of evidence at trial of a defendant's post-arrest and post-*Miranda*[2] warning silence. *See Doyle v Ohio*, 426 US 610, 617-619; 96 S Ct 2240; 49 L Ed 2d 91 (1976). However, the admission of testimony "concerning a defendant's silence *before* custodial interrogation and *before* the *Miranda* warnings have been given" is not a violation of a defendant's constitutional right to silence.

*People v Schollaert*, 194 Mich App 158, 164; 486 NW2d 312 (1992) (emphasis added). Further, “a prosecutor may comment on a defendant's failure to report a crime when reporting the crime would have been natural if the defendant's version of the events were true.” *People v Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003).

In *Goodin*, the defendant argued the prosecutor committed misconduct and violated the Fifth Amendment when the prosecutor: (1) elicited testimony that the defendant did not contact the police in the days following the crime; and (2) emphasized this testimony during closing argument. *Goodin*, 257 Mich App at 432. The Court concluded that, because “the silence occurred before any police contact,” the prosecutor was not prohibited from commenting on that silence. *Id.* Further, the prosecutor was permitted to elicit evidence of flight (including the act of fleeing the scene of a crime) to “support an inference of consciousness of guilt.” *Id.* (quotation marks and citation omitted). Thus, any of the prosecutor's comments regarding the “evidence of flight and any inferences that can be drawn therefrom” did not infringe upon the defendant's privilege against self-incrimination. *Id.* at 432-433.

Here, the prosecutor asked defendant why, if it were true he acted in self-defense, he did not call the police after the incident. The prosecution also asked defendant, “You just left him inside the hotel room is what [you are] saying. You ran away ...?” Like in *Goodin*, the prosecutor was asking defendant questions about his silence that occurred *before* his arrest or any contact with the police. Additionally, because the evidence of flight supported an inference of guilt, the prosecutor was allowed to question defendant about why he left the scene without informing anyone of what had happened. *See id.* at 432-433. Likewise, had defendant's version of events been true (i.e., that defendant acted in self-defense), it would be reasonable for the prosecutor to comment on defendant's failure to report the crime. *See id.* 432. Therefore, we conclude defendant cannot show plain error

affecting his substantial rights that the prosecutor violated defendant's Fifth Amendment right to silence.

2. DENIGRATION OF DEFENDANT

Generally, “prosecutors are accorded great latitude regarding their arguments and conduct.” *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks and citation omitted). Consequently, they are permitted to “argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case.” *Id.* (quotation marks, citation, and brackets omitted). However, “prosecutors should not ... express their personal opinion of a defendant's guilt, and must refrain from denigrating a defendant with intemperate and prejudicial remarks.” *Id.* at 282-283. Comments made during closing argument are “reviewed in context to determine whether they constitute error requiring reversal.” *Id.* at 283.

Defendant argues the prosecutor “crossed the line” by calling defendant a “liar.” In support of this argument, defendant cites the prosecutor's closing argument in which he stated: “[T]he defendant was in no danger of being killed or seriously injured. He left that room for five to ten minutes after being struck twice by Mr. Triplett. His belief, if any, was dishonest and unreasonable.” However, nowhere in the record did the prosecutor explicitly call defendant a “liar.” The legal standard for establishing self-defense requires defendant to show he “*honestly and reasonably* believe[d] his life [was] in imminent danger or that there [was] a threat of serious bodily harm.” *Riddle*, 467 Mich at 127 (emphasis added); *see also* MCL 780.972(1)(a). Thus, the prosecutor's decision to refer to defendant's belief as “dishonest and unreasonable” merely incorporated the legal standard into his closing argument to show that defendant was not acting in self-defense during the incident. Thus, considering the context of the prosecutor's statement, we conclude he did not attack defendant with “intemperate and prejudicial remarks,” *see Bahoda*, 448 Mich at 283, and

defendant has not established plain error affecting his substantial rights.

### 3. ARGUING FACTS NOT IN EVIDENCE

Generally, “[a]n attorney may not refer to facts that are not in the record.” *People v Meissner*, 294 Mich App 438, 457; 812 NW2d 37 (2011). When an attorney references, during closing argument, a fact that was not in the record, “reversal is not required [if] the trial court clearly instructed the jury that the lawyer[’s] statements and arguments are not evidence.” *Id.* “It is well established that jurors are presumed to follow their instructions.” *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Reversal will also not be required “if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction.” *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001) (quotation marks and citation omitted). Further, “[a]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument.” *Id.* at 593 (quotation marks and citation omitted).

In the instant case, during closing argument, defense counsel first remarked on Stinson's absence and stated, “[Stinson] was there. [She is] a res gestae witness and somehow [she is] missing .... [The prosecution should have] kept track of her, but they [did not].” During rebuttal, the prosecutor responded to defense counsel's argument and stated, “I asked her, [Askew], when was the last time you saw Shante Stinson. She said it was that night in question. [She has] never had any contact with her ever again; neither have I.” The prosecutor then continued, “Nobody knows where [Stinson] is. If I knew where she was, I would have had her testify today, but unfortunately, [she is] not here. So [you all are] going to get that jury instruction as requested by [ ] defendant that says that her testimony may not have been in my favor.” Because the prosecutor was responding to defense counsel's argument that it was the prosecution's

> responsibility to keep track of Stinson, we conclude the prosecutor's remarks that he did not have any contact with her was not plain error. *See id.*
>
> Additionally, we conclude the comments, even if they were improper, were also cured by a timely instruction from the court. After the prosecutor's closing argument and during jury instructions, the trial court instructed the jury, "Shante Stinson is a missing witness whose appearance was the responsibility of the prosecution. You may infer that this witness's testimony would have been unfavorable to the prosecution's case." Thus, even if the prosecutor improperly informed the jury that he did not have contact with Stinson, the court quickly cured any prejudicial effect by informing the jury itself that it may infer Stinson's testimony weighed against the prosecution's case. *See id.* at 586.
>
> The trial court also clearly instructed the jury that "[t]he lawyers' statements and arguments and any commentary are not evidence .... You should only accept things that the lawyers say that are supported by the evidence or by your own common sense and general knowledge." Thus, even if the prosecutor's statement regarding Stinson's absence were considered a fact not in the record, the trial court properly instructed the jury that an attorney's statements are not considered evidence. *See Meissner*, 294 Mich App at 457. Because a jury is presumed to follow its instructions, we conclude defendant cannot show the prosecutor's statement regarding Stinson's absence resulted in plain error affecting defendant's substantial rights. *See Graves*, 458 Mich at 486.

*Potts*, 2024 WL 742097 at *4-6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First,

Petitioner fails to show that the prosecutor engaged in misconduct by referencing his pre-arrest, pre-*Miranda* silence. The Supreme Court has ruled that the use of a defendant's pre-arrest silence for impeachment does not violate the Fifth Amendment right against self-incrimination or the Fourteenth Amendment right to due process. *See Jenkins v. Anderson*, 447 U.S. 231, 238-239 (1980). Additionally, the Supreme Court ruled that a prosecutor may use a defendant's pre-arrest silence as substantive evidence of guilt as long as the defendant did not expressly invoke the right to remain silent. *Salinas v. Texas*, 570 U.S. 178, 186 (2013); *see also Abby v. Howe*, 742 F.3d 221, 228 (6th Cir. 2014).

Given such authority, Petitioner cannot establish that the prosecutor engaged in misconduct or otherwise violated his constitutional rights by referencing his abandonment of the victim in the hotel room, his flight from the scene, and his failure to report the incident to the police – all of which referred to Petitioner's pre-arrest and pre-*Miranda* silence. *See, e.g., Adams v. Davids*, No. 2:21-CV-12361, 2024 WL 348505, *5 (E.D. Mich. Jan. 30, 2024) (denying habeas relief on similar claim), cert. app. den. sub nom. *Adams v. Macauley*, No. 24-1172, 2024 WL 4009046 (6th Cir. July 1, 2024).

Second, Petitioner fails to show that the prosecutor engaged in

misconduct by calling him a liar. It is inappropriate for a prosecutor to make personal attacks on a defendant or defense counsel. *United States v. Young*, 470 U.S. 1, 9 (1985). A prosecutor, however, may highlight inconsistencies or inadequacies in the defense, *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), point out the lack of evidence supporting the defense theory, *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005), and argue from the facts that a defense witness, including a testifying defendant, is not worthy of belief. *Portuondo v. Agard*, 529 U.S. 61, 69 (2000); *Cristini v. McKee*, 526 F.3d 888, 901-902 (2008). While a prosecutor may not express a personal opinion about a defendant, "this does not mean that the prosecution cannot attack the defendant's credibility or even assert that the defendant is lying." *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008).

In this case, the prosecutor argued from the evidence that Petitioner did not have an honest and reasonable belief that he was in imminent danger of serious harm so as to support his claim of self-defense. The prosecutor did not personally attack Petitioner, but rather argued that his testimony and his assertion of self-defense was not worthy of belief. Petitioner fails to establish that the prosecutor erred or engaged in conduct which rendered his trial fundamentally unfair.

Lastly, Petitioner fails to show that the prosecutor engaged in misconduct by arguing facts not in evidence. While prosecutors may not misstate the evidence, *United States v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001), or argue facts not in evidence, *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004), they can make arguments based upon the evidence and have "'leeway to argue reasonable inferences from the evidence' during closing arguments." *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (quoting *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)); *see also Stermer v. Warren*, 959 F.3d 704, 725 (6th Cir. 2020).

In this case, the prosecutor commented on witness Askew's testimony regarding the last time she saw Stinson, the unavailable witness, and noted that he had not had contact with Stinson either in response to defense counsel's remarks about Stinson not appearing at trial. The prosecutor did not argue facts not in evidence relative to Petitioner's guilt or innocence of the crime. The prosecutor's comment was not improper in that context. As found by the Michigan Court of Appeals, the prosecutor was responding to the defense counsel's argument that it was the prosecution's responsibility to "keep track" of Stinson. The Michigan Court of Appeal's conclusion that the comment was not plain error was not unreasonable.

Nonetheless, even if the prosecutor's argument was improper, it did not affect the fundamental fairness of the trial. As noted by the Michigan Court of Appeals, the trial court gave the jury a proper missing witness instruction and instructed the jury about the proper consideration of the evidence and the fact that the attorney's arguments are not evidence. Such instructions cured any potential prejudice to the Petitioner. *See, e.g., Hamblin v. Mitchell*, 354 F.3d 482, 495 (6th Cir. 2003); *Knapp v. White*, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003). Jurors are presumed to follow the court's instructions. *Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it.").

Petitioner fails to establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair. For purposes of habeas review, he fails to show that the Michigan Court of Appeals' decision to that effect is unreasonable. Habeas relief is not warranted on these claims.

**D. Effectiveness of Trial Counsel**

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the alleged instances of

prosecutorial misconduct and failing to request corrective measures.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Id*. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions

were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Petitioner raised this claim on direct appeal. The Michigan Court of Appeals denied relief, explaining in relevant part:

> A criminal defendant's right to counsel is guaranteed by both the United States and Michigan Constitutions. *See* U.S. Const., Am. VI; Const. 1963, art. 1, § 20. However, for a defendant to prevail on a claim of ineffective assistance of counsel, he "must establish (1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *Sabin*, 242 Mich App at 659.
>
> Thus, "[e]ffective assistance of counsel is presumed, and [a] defendant bears a heavy burden of proving otherwise." *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016). A defendant also "must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." *Id*. "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). As discussed above, the trial prosecutor did not commit prosecutorial misconduct because he (1) did not violate defendant's constitutional right to remain silent, (2) did not denigrate defendant, and (3) did not argue facts not in evidence. Therefore, because defendant's trial counsel was not required to make futile objections, we conclude defense counsel's performance did not fall below an objective standard of reasonableness. *See Ericksen*, 288 Mich App at 201.

*Potts*, 2024 WL 742097 at *6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

Given the Michigan Court of Appeals' decision, as well as this Court's determination that the underlying prosecutorial misconduct claims lack merit, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct for not objecting to such matters at trial. Counsel cannot be deemed ineffective for failing to make a futile or meritless objection or argument. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

## V. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). When a court denies relief on procedural grounds, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Id*. Petitioner makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith. *See* Fed. R. App. P. 24(a). Accordingly, the Court **DENIES** leave to proceed in forma pauperis on appeal. This case is closed.

**IT IS SO ORDERED**.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

Dated: August 31, 2026